OPINION OF THE COURT
Laura R. Johnson, J.
Defendants have been charged in felony complaints with various offenses including the class C felony of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). It is alleged that defendants were passengers in a vehicle in which a loaded gun was recovered. The People seek orders pursuant to Matter of Abe A. (56 NY2d 288, 291 [1982]), compelling each defendant to submit to a buccal swab for the purpose of collecting a DNA sample in order to determine if his DNA matches DNA from swabs of the gun. Defendants oppose the application or, in the alternative, seek a protective order preventing any sample ordered by this court from being maintained in the Medical Examiner’s local database. For the following reasons, the request for an order to compel each defendant to provide a sample of his DNA is granted, albeit with a protective order.
Facts
According to the felony complaints, the allegations in the parties’ motion papers, and the notices served pursuant to CPL 710.30, at approximately 10:18 p.m. on January 3, 2017, Officer Salvatore Melore observed a taxi or livery car run through a red light without stopping. At police direction, the car pulled over in front of 946 Ashford Street in Kings County. Defendant Halle was seated in the front passenger seat and defendant Feggins was seated in the rear passenger-side seat behind Halle, and a third individual, Joshua Berroa, was seated behind the driver. Officer Melore observed a lit marijuana cigarette in defendant Feggins’s hand, a quantity of marijuana was recovered from the person of defendant Halle, and a loaded re *337 volver was observed on the rear driver’s side floor near Ber-roa’s feet.[1]
The gun (which is identified in the felony complaints as a .32 caliber revolver, but in other paperwork including the People’s motion as a .38) was swabbed in various locations and those swabs were submitted on January 10, 2017 to the New York City Office of Chief Medical Examiner (OCME) for DNA testing. On March 16, 2017, OCME issued a report of its analysis of lab No. FB17-00235 indicating that a mixture of DNA from three contributors was found on all three swabs. From the swab of the trigger and trigger guard, OCME reported that it was able to develop a 22-loci DNA profile of “Male Donor A,” who had contributed 85% of the DNA mixture on that swab. While no individual contributor’s profile could be developed from the DNA mixtures on the other two swabs, OCME reports that the results of those swabs are nonetheless “suitable for comparison,” meaning that upon submission of a DNA sample from a known person, it might possibly be determined whether that person can be excluded or included as one of the three contributors to the mixture (People’s exhibit l).[2]
Procedural History
By motion filed March 30, 2017, the People now seek to obtain a DNA sample directly from each defendant so that they may compare it to the mixtures of DNA found on the gun, including the DNA profile of “Male Donor A.” In papers filed April 25, 2017, defendant Halle opposed the motion and, in the alternative, cross-moved for a protective order limiting the use of any court-ordered sample to this investigation. Defendant Halle also applied to this court for a subpoena addressed to the OCME, seeking information about any comparison of the swabs *338 from the gun in this case to any “existing DNA profile” of defendant Halle. The court ordered that subpoena on April 26, 2017. On May 10, 2017, this court received papers from defendant Feggins, also opposing the People’s application and, in the alternative, seeking a protective order.
On May 25, 2017, OCME’s response to the subpoena was delivered to the court.[3] OCME had supplied copies of the responsive documentation for defendant Halle and for the People, which those parties collected from the court.
The initial briefing schedule on the People’s motion included an opportunity for them to submit reply papers on May 30, 2017. On May 18, the court notified all parties of its request that the People’s reply include clarification as to whether OCME was in possession of a putative profile of Halle’s DNA, whether any such profile was subject to a protective order, and whether any such profile had been compared to the swabs from the gun in this case. On May 30, 2017, the People submitted an affirmation and memorandum in reply.
The matter is now fully submitted for the court’s decision.
Analysis
Jurisdiction
At the outset, this court rejects defendant Halle’s contention that this court lacks jurisdiction to compel the production of DNA at this stage of the proceedings. In Matter of Abe A. (56 NY2d 288 [1982]), such an order was found to be a lawful and proper mechanism to compel evidence when an investigation was in a pre-arrest stage. Contrary to defendant’s assertion, the filing of a felony complaint does not require the People to cease investigation and seek an indictment based only on the evidence they already have, nor do the rules of CPL article 240 applicable to indicted cases suggest that an application for a search warrant or court order is precluded between the filing of a felony complaint and an indictment. Where a felony complaint is pending, defendant’s Fourth, Fifth, and Sixth Amendment rights are all protected by the requirement that the District Attorney makes, on notice to the defense with an opportunity to respond, an application setting forth the showing of probable cause described *339 in Abe A. Only then will a court compel an individual to provide a DNA sample or other non-testimonial evidence (Matter of Abe A., 56 NY2d at 296; see also People v Benitez, 33 Misc 3d 1232[A], 2011 NY Slip Op 52192 [U] [Sup Ct, Bronx County 2011]; People v Salcedo, 2001 NY Slip Op 40323 [U] [Sup Ct, Westchester County 2001]; see also People v Pastorius, 272 AD2d 944, 944-945 [4th Dept 2000] [court had jurisdiction to order lineup even though pending accusatory instrument was a felony complaint]; People v Shields, 155 AD2d 978, 978 [4th Dept 1989] [same]).[4]
At the same time, likening the DNA order to a search warrant, defendant Halle argues that evidence recovered pursuant to the execution of that order should be returned to the court, and not to OCME (CPL 690.55) (Halle opp ¶ 19). The provisions governing search warrants grant the court the authority to grant physical custody of evidence seized pursuant to a warrant to the agency that sought the warrant (CPL 690.55 [1] [b]), allowing the agency to subject it to forensic examination— with outside assistance as necessary (see People v DeProspero, 20 NY3d 527, 531 [2013]). The Court of Appeals declaration that “the duties of OCME are, by law, independent of and not subject to the control of the office of the prosecutor, and that OCME is not a law enforcement agency” (People v Washington, 86 NY2d 189, 192 [1995]) by no means precludes law enforcement from submitting evidence obtained pursuant to search warrant or court order to OCME for analysis. On the contrary, the Medical Examiner is frequently called upon and “may play *340 an important role even in nonhomicide cases by supplying the People with critical biochemical forensic analyses, such as serology testing and DNA profiling” (id. at 196).
As the Court of Appeals has stated, “[n]omenclature notwithstanding, if the application and the relief comport with all the requisites of a search warrant, it may be taken for what it is.” (Matter of Abe A., 56 NY2d at 294.) So long as the requirements of Abe A. are met, then, this court has authority to issue an order requiring defendant to provide a DNA sample and authorizing the testing of that sample by OCME.
The Sufficiency of the Application for DNA Testing
It is well settled that, in order to obtain an order compelling a defendant to supply corporeal evidence, the People must “establish (1) probable cause to believe the suspect has committed the crime, (2) a clear indication that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable” (Matter of Abe A., 56 NY2d 288, 291 [1982] [internal quotation marks omitted]). In deciding whether to issue such an order, the court must balance “the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it, . . . against concern for the suspect’s constitutional right to be free from bodily intrusion” {id. at 291).
Penal Law § 265.15 (3) creates a presumption of unlawful possession of the gun by all the passengers in this vehicle for hire, providing probable cause to believe that one or both of the defendants violated Penal Law § 265.03 (3). The People are not required to rest on the vehicle presumption, however (see People v Robinson, 251 AD2d 602, 603 [2d Dept 1998], affd 93 NY2d 986 [1999] [prosecutor may not be forced to accept an offer to stipulate to an element of a charged crime]). Since DNA suitable for comparison was recovered from the swabs of the gun, there is clear indication that relevant material evidence will be found in a comparison of the DNA mixture detected on the gun with DNA profiles of these defendants, satisfying the second requirement of Abe A.[5] Defendants have raised no challenge to the safety and reliability of an oral swab for DNA, the third requirement of Abe A.
*341 This does not conclude the analysis, however. Without question, the presence of unlicensed handguns in New York City is a serious problem with the potential for deadly results. The court must balance the importance of identifying the owner of this illegal gun against the defendants’ right to be secure against unreasonable bodily intrusion.[6] This balancing test is akin to the so-called “exhaustion” requirement of an eavesdropping warrant: even where there is probable cause for the issuance of the warrant, the People must satisfy the Fourth Amendment prohibition against unreasonable searches and seizures by demonstrating that “normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous to employ” (CPL 700.15 [4]). Similarly, before a court may compel a defendant to supply corporeal evidence, it must consider the “unavailability of less intrusive means of obtaining it” (Abe A., 56 NY2d at 291, 296) in determining whether the order is appropriate.
Defendant Halle focuses on this “less intrusive means” language, contending that the OCME already has a “pseudo-exemplar profile” of Halle’s DNA stored in its local database, the Local DNA Index System (LDIS)—a database that is the subject of both defendants’ cross motions for a protective order.[7] The technical manuals of the Office of Chief Medical Examiner distinguish between “true” and “pseudo” exemplars. A “true exemplar,” such as “a blood sample or an oral swab,” must have “documentation stating that it is in fact from the person named[,] . . . such as . . . paperwork from the [medical/ legal investigator] who obtained the sample, paperwork from the NYPD (including a voucher and sometimes a signed consent form), or paperwork from the [District Attorney’s office]” (New York City Office of Chief Medical Examiner, Forensic Biology Evidence and Case Management Manual: Evidence Examina *342 tion § 15.2.1 [eff June 6, 2017]).[8] On the other hand, “pseudo-exemplars” have been “abandoned” under circumstances that make them “items with a reasonable probability of finding a single-source DNA profile from the suspect” (id. § 15.3.1).
Read together, the parties’ submissions reveal that OCME is, in fact, in possession of a DNA profile developed from a cigarette butt obtained in connection with another case, People v Haile (Sup Ct, Kings County, Mondo, J., indictment No. 02682-2017) (Halle opp f 8; Halle application for subpoena duces tecum ¶ 9; plaintiff’s reply mem f 2). There are no particulars before the court as to the circumstances under which that cigarette butt was recovered. The admissibility of the profile developed from it may be subject to challenge in either the indicted case or this one. Furthermore, the People explain in response to this court’s direct questions on the subject that although the DNA profile obtained from that pseudo-exemplar (No. FBS16-03881) is governed by no protective order, it “was not flagged for comparison by the OCME” because defendant gave a different name—“Haile”—in that case (plaintiff’s reply aff I 9).
Defendant Halle takes the position that comparison of that pseudo-exemplar with the swabs of the gun—no matter the result—would obviate the need for a DNA order in this case. If the comparison were to show no match to any of the donors detected in the swab of the gun, Halle argues, that information would rule him out as a contributor to that DNA mixture, and would defeat the second requirement of Abe A., that there be “a clear indication that relevant material evidence will be found.” On the other hand, if the pseudo-exemplar were to match one of the contributors to the DNA mixture on the gun, then using the profile from the pseudo-exemplar would be “less intrusive” than requiring a true exemplar that would merely “duplicate” evidence that the People already have (Halle opp ¶¶ 12, 15).
In support of his argument that the People must be content with the pseudo-exemplar they have, defendant Halle cites People v Golson (Sup Ct, Queens County, Apr. 3, 2017, DiBiase, J., indictment No. 02591-2016). In that case, however, an evi-dentiary sample in a burglary case was “uploaded”—presumably to the state or national DNA Identification Index—where *343 it was matched to the defendant’s DNA profile in that databank. Such a databank profile would have been there only based on a true exemplar provided after a prior conviction.[9] In this case, by contrast, defendant has not conceded the authenticity of the profile developed in the indicted case against “Haile” and there is no support for defendant’s assertion that his “profile is in the New York State DNA databank” (Halle mem at 10). Defendant has not stipulated that he and “Haile” are one and the same; nor has he stipulated that the pseudo-exemplar was obtained in a manner that did not violate defendant’s (or “Haile’s”) Fourth Amendment rights and protections against unreasonable searches and seizures.
The People are not required to make do with “an abandonment sample purported to be taken from the defendantf ]” (plaintiff’s reply aff ¶ 10), but are entitled to develop evidence as they see fit to meet their burden of proof beyond a reasonable doubt (Matter of Johnson v Shillingford, 108 AD3d 630 [2d Dept 2013] [order to compel granted even where defendant had offered to stipulate to DNA match]). Nevertheless, the People have indicated that they would be willing to make use of the pseudo-exemplar from the other case if defendant Halle is willing to stipulate that it is his DNA (plaintiff’s reply aff ¶ 11). Feggins, of course, is not in a position to make such a stipulation, and there is no alternative means to obtain his DNA profile.
In all, this court finds that the three-prong test in Abe A. is satisfied as to each defendant. There is probable cause to believe that at least one of the suspects possessed the gun; there is clear indication that a true exemplar would yield relevant material evidence; and the buccal swab method of rubbing a textured stick against the inside of the cheek is safe and reliable. Furthermore, the charge here is serious; evidence of possession of the gun is important to the investigation; and a buccal swab is a much less invasive procedure than the blood test ordered in Abe A.—requiring barely more bodily intrusion than use of a pseudo-exemplar. In all, the balancing test is also satisfied.
*344 The request for an order to compel a DNA sample from each of the defendants is therefore granted.[10]
Defendants' Request for a Protective Order
Defendants have made cross motions requesting that this court include in any orders a protective provision preventing OCME from maintaining their DNA profiles for any purpose other than comparison with the specific evidence in this case. The People oppose.
The People describe that the OCME Forensic Biology laboratory has maintained a databank of DNA profiles generated during its analysis of cases since 1997, before New York City joined the national Combined DNA Index System (CODIS). OCME’s internal database was until recently called the “Linkage” database, but is now referred to as a LDIS. OCME may upload DNA profiles from crime scene evidence to the State DNA Index System (SDIS); evidence in SDIS may in turn be uploaded to CODIS (plaintiff’s mtn aff ¶¶ 14-18).[11] However, as is illustrated in the flow chart provided by one of the defendants (Feggins opp at 7), and as the People acknowledge (plaintiff’s mtn aff ¶ 16), only “forensic” profiles—those developed from crime scene evidence—may be uploaded for comparison to “convicted offender” profiles in the state and national databases. Putative profiles of suspects developed from pseudo-exemplars are in the LDIS along with other evidence recovered from whatever may be considered a “crime scene.” Like any evidence, however, their admissibility in any given case may be subject to challenge, and their relevance must be demonstrated.
The People argue that uploading the profile developed from a suspect’s court-ordered DNA exemplar to the “internal OCME databank”—whether that databank is referred to as Linkage or LDIS—is “an invaluable investigative tool” enabling the establishment of “links between seemingly unrelated crime scenes” (plaintiff’s mtn aff f 18). Without a protective order, however, a court-ordered DNA exemplar will be added to the LDIS, allowing OCME to draw connections “between suspects *345 and crimes” (plaintiffs mtn aff ¶ 18 [emphasis added]) by comparing the known profile of a person who has not been convicted of any crime with unknown crime scene profiles from all over the five boroughs of New York City. Certainly, this ability is desirable to law enforcement seeking to identify patterns and close unsolved cases. In this court’s view, however, it is not consistent with the provisions of Executive Law article 49-B, which govern the use and dissemination of DNA profiles.
The Forensic Biology lab of OCME is a “forensic DNA laboratory,” as that term is defined in Executive Law, article 49-B, § 995 (2). Its function is to “perform[ ] forensic DNA testing on crime scenes or materials derived from the human body for use as evidence in a criminal proceeding or for purposes of identification” (id.). Only a “designated offender subsequent to conviction and sentencing” is required to “provide a sample appropriate for DNA testing to determine identification characteristics specific to such person and to be included in a state DNA identification index” (Executive Law § 995-c [3] [a]).[12] When such a convicted person provides a DNA exemplar, it is OCME’s responsibility to “forward the resulting DNA record only to the state DNA identification index in accordance with the regulations of the division of criminal justice services” (Executive Law § 995-c [5] [emphasis added]). In other words, and as the People acknowledge, OCME does not have unfettered access through its LDIS even to the profiles of convicted offenders maintained in SDIS, National DNA Index System, or CODIS (plaintiff’s mtn aff f 17).[13] Executive Law article 49-B includes a provision for the expungement, upon application, of the records of an individual who “either voluntarily or pursuant to a warrant or order of a court, has provided a sample for DNA testing in connection with the investigation or prosecution of a crime” (Executive Law § 995-c [9] [b]). This provision suggests that it may not have been unforeseen that a forensic DNA laboratory such as OCME might retain DNA profiles of *346 suspects obtained pursuant to pre-conviction court order. Nevertheless, several published trial-level decisions have held that the state statutory scheme does not contemplate OCME’s storage of court-ordered pre-conviction suspect profiles in a local index (People v Murray, 54 Misc 3d 825, 830 [Sup Ct, Bronx County 2016]; People v Matos, 37 Misc 3d 252, 262-263 [Crim Ct, Kings County 2012]; People v Rodriguez, 196 Misc 2d 217, 218 [Sup Ct, Kings County 2003], adhering after rearg to 193 Misc 2d 725 [Sup Ct, Kings County 2002]).[14]
It is not necessary for this court to determine whether OCME’s procedures up to now have been preempted by state law.[15] The court notes, however, that OCME has chosen no longer to use the term “Linkage” to describe its database (plaintiff’s mtn aff ¶ 14), and has recently requested that protective orders specify by FB laboratory report number the evidence to which any court-ordered exemplar may be compared.[16]
The People emphasize, and prior decisions have noted, that OCME does not have direct access to DNA profiles stored at the state or national level (plaintiff’s mtn aff ¶ 17; People v Dehraux, 50 Misc 3d 247, 262 [2015]; People v Mohammed, 48 Misc 3d 415, 417 [Sup Ct, Bronx County 2015]). Even if the Executive Law does not expressly prohibit the maintenance of a local database, it is difficult for this court to understand why OCME, as a mere local DNA laboratory, would be denied access to the data in SDIS and yet, solely by artifact of being located in the State’s most highly populated city, be permitted access to something like half the DNA evidence in the State of New York, including profiles of unconvicted—and therefore *347 presumptively innocent—individuals (People v Murray, 54 Misc 3d at 830).[17]
The People assert that the “overwhelming majority” of courts in New York City deny protective orders (plaintiff’s mtn mem of law at unnumbered page 3). The unpublished trial-level cases cited by the People (none of which were provided to the court) appear all to rely on People v King (232 AD2d 111, 117 [2d Dept 1997]), in which the Second Department held that once a sample of the defendant’s blood had been lawfully obtained pursuant to Abe A., the defendant no longer retained a privacy interest in it, and additional scientific analysis did not involve any further search and seizure of his person (People v King, 232 AD2d at 117-118). However, King was decided before the implementation of article 49-B of the Executive Law, and specifically noted the absence at that time of any “constitutional provisions or legal precedents concerning the disposition of a blood sample” such as already existed for fingerprints and arrest photographs (id. at 118 [internal quotation marks omitted]). Furthermore, People v Sterling (57 AD3d 1110 [3d Dept 2008]), an appellate-level case involving comparison with crime scene evidence of a DNA profile from an empty milk carton thrown out by the defendant, is inapposite. The Fourth Amendment analysis in the decision turns on the “abandoned” status of the milk carton; it simply does not address the statutory protection afforded to a person who has not yet been convicted of a crime against having the profile developed from his court-ordered DNA exemplar retained for future comparisons.
Similarly, the Court of Appeals decision in People v DeProspero (20 NY3d 527 [2013]) does not require a denial of defendants’ request for a protective order. As the Court of Appeals observed in upholding a forensic examination of the memory card in defendant’s computer for child pornography well after he had pleaded guilty to a charge based on a single image found in a preliminary search, “[t]he duration of a warrant’s authority is more appropriately measured by the persistence of the cause for its issue” (id. at 532). Here, however, that cause is only what has been set forth in the People’s application relating to this particular investigation. To allow OCME to compare *348 these defendants’ DNA profiles to any other crime scene evidence in their possession, now or in the future, would vitiate the Abe A. requirements that such an order issue only upon a showing of “probable cause to believe the suspect has committed the crime [and] a clear indication that relevant material evidence will be found” (Matter of Abe A., 56 NY2d at 291 [internal quotation marks omitted]). Equally if not more significant is the New York State statutory framework previously discussed. That framework provides that only upon a criminal conviction and sentence is an individual required to provide DNA which, when uploaded to SDIS and CODIS, is then available for general comparison to crime scene evidence in unrelated cases (Executive Law § 995-c [3], [5], [6]). Consistent with that statutory scheme, then, this court’s orders in the two cases before it will permit only circumscribed use of defendants’ DNA: the exemplars ordered by this court may be compared only to the swabs from the gun, the evidence assigned laboratory No. FB17-00235.
The police and prosecutors are free to request that OCME compare the DNA profile obtained from the gun swabs in this case and/or the pseudo-exemplar in the Haile case to DNA profiles obtained from crime scenes and evidence in other investigations that OCME maintains in its LDIS. They are also free, following applicable protocols, to request comparison of these evidence profiles with individual DNA profiles of convicted persons that are already in CODIS or in the New York SDIS. If such comparisons yield results consistent with the existence of common contributors, such results may, of course, be used to support an application for a DNA order in connection with the investigation and prosecution of any other crime. For now, however, there is no authority under New York State law for uploading a presumptively innocent defendant’s DNA profile into a database, albeit only a local one (People v Murray, 54 Misc 3d at 830-831).
Defendants’ motions for protective orders are granted.
Conclusion
Accordingly, the People’s motion for DNA orders is granted; and defendants’ cross motions for protective orders are also granted.

. Berroa was also charged under docket No. 2017KN001063, but the People have withdrawn their motion as to him. The assigned ADA informed this court on April 25, 2017 that Berroa has been eliminated as a suspect based on a comparison of the DNA on an “abandonment sample”—an item handled and then “abandoned” by the defendant in such a manner that it is believed to contain his DNA. The driver of the taxi does not appear to have been charged.

. The notes to the OCME laboratory report indicate that the inclusion or exclusion of an individual is based on a “likelihood ratio.” The reliability of profile determination and/or OCME’s probability calculations in connection with the testing of low copy number DNA has been seriously questioned (see People v Collins, 49 Misc 3d 595 [Sup Ct, Rings County 2015, Dwyer, J.]; see also Erin E. Murphy, Inside the Cell: The Dark Side of Forensic DNA 74-82 [2015]).

. The envelope from OCME had been forwarded to the Legal Aid Society, which represents defendant Halle. Defense counsel delivered the United States Postal Service priority mail envelope, properly addressed to the court and unopened, to my court attorney.

. The cases cited by defendant Halle do not support his contention that the People must wait until after indictment to seek a DNA order (Halle opp aff ¶ 16; mem at 10-18). On the contrary, they stand for the proposition that although DNA and similar evidence compelled from the defendant may not be obtained pursuant to the discovery provisions of the CPL, it may be sought pursuant to an Abe A. order issued by a court of general jurisdiction (People v Victor, 52 Misc 3d 1216[A], 2016 NY Slip Op 51180[U], *3 [Peekskill City Ct 2016] [“There is no question that a defendant can be compelled to provide a buccal cell sample for DNA analysis pre- and post-arrest”]; People v Bagley, 173 Misc 2d 441, 443 [Mount Vernon City Ct 1997] [application pursuant to Abe A. must be made in “a court of general jurisdiction,” which City Court was not]; People v Hunce, 141 Misc 2d 401, 402 [Crim Ct, Bronx County 1988] [pre-indictment, court could not grant request made pursuant to CPL 240.40 (2) (b) (vi) for handwriting exemplar]; People v Wright, 46 Misc 3d 938 [Crim Ct, NY County 2014] [pre-indictment, court could not grant request for DNA made pursuant to CPL 240.40 (2) (b) (v)\; see also People v Perri, 72 AD2d 106, 110, 112 [2d Dept 1980], affd 53 NY2d 957 [1981] [defendant could not be compelled by subpoena to appear before grand jury to provide handwriting exemplar without conferring immunity; People could nevertheless have applied to Criminal Term for an order compelling a handwriting exemplar]).

. Because OCME’s analysis of the swabs from the gun resulted in at least one full DNA profile for comparison, this court need not decide whether the reliability of comparison with the remaining samples is too questionable to justify the intrusion or whether that is an evidentiary issue for the trial court.

. The People incorrectly argue—as they do routinely in their submissions on similar motions—that “there is no constitutionally protected interest involved” in a request for a DNA exemplar (plaintiff’s mtn mem of law at unnumbered page 2). The three requirements enumerated in Abe A. are clearly designed to ensure that any such request satisfies the requirement that there be probable cause for engaging in a reasonable seizure of the defendants’ bodily material—a Fourth Amendment issue (Abe A., 56 NY2d at 291, 295; see also People v Matos, 37 Misc 3d 252, 258 [Crim Ct, Kings County 2012]).

. The Feggins opposition papers contain residual references to what his counsel informed the court on May 9, 2017 was his initial mistaken understanding that OCME had a pseudo-exemplar from him as well. The People’s reply clarifies that there is no such exemplar.

. The full text of this manual is available at http://wwwl.nyc.gov/assets/ ocme/downloads/pdf/technical-manuals/forensie-biology-evidence-and-ease-management-manual/evidence-examination.pdf.

. Defendant has not provided a copy of this unpublished decision, leaving this court to rely on the defendant’s description of the case and descriptions it has read in similar submissions in other cases. This decision would not be binding authority on this court in any event.

. As the People note in their reply, defendant Feggins’s opposition to an order allowing the use of force is premature, as the People have not requested such a provision. The People will be free to request such an order should either defendant fail to cooperate with the collection of the oral DNA sample.

. For purposes of this decision, it is not necessary to discuss the other types of evidence maintained in the LDIS related to missing persons and unidentified human remains.

. The transcript of the debate on the 2012 amendment to Executive Law article 49-B reflects that Assemblyman Reilly exacted from Assemblyman Lentol an assurance that “we won’t start collecting [DNA] for those who have never committed a crime” and that he would “adamantly oppose any further expansion of the database” (NY Assembly Debate tr, L 2012, ch 9, CPL/Executive Law, NY Legislative Service, Inc. at 21-22).

. Certain OCME personnel are certified to access CODIS (plaintiff’s mtn aff ¶ 17).

. While the mind-set of the current legislature is of limited value, it bears noting that proposed amendments to article 49-B currently under consideration include expansion of the definitions in Executive Law § 995 to include the terms “CODIS” and “SDIS” with no mention of any “LDIS” or “local” database, and to define “Subject DNA profile” and “Subject index” to mean DNA profiles from “a subject convicted of a crime” (2017 NY Assembly Bill A7371). The text of this bill, introduced on April 25, 2017, is available at http://nyassembly.gov/leg/?default_fld= & leg_video= & bn=A07371 & term=2017 & Summary=Y & Floor%26nbspVotes=Y & Text=Y (last accessed on June 7, 2017).

. OCME could lose its accreditation if it were determined that it had “violated in a material respect any provision of [Executive Law article 49-B] or the rules and regulations promulgated pursuant thereto” (Executive Law § 995-b [3] [e] [v]).

. The revised form of DNA order was presented by the People to this court in early May 2017, in connection with another case, and will be adopted rather than the proposed form attached to the People’s motion in this case.

. For the same reasons, this court respectfully declines to follow the reasoning of Judge Judy Kim set forth in two decisions issued on May 9, 2017, in People v Perez (NYLJ 1202785992665 [Crim Ct, NY County, May 9, 2017]), and People v Taylor (NYLJ 1202785992553 [Crim Ct, NY County, May 9, 2017], summary at NYLJ, May 15, 2017 at 17, col 3).