People v Barnaby (2025 NY Slip Op 50127(U))

[*1]

People v Barnaby

2025 NY Slip Op 50127(U)

Decided on February 5, 2025

Supreme Court, Kings County

Kitsis, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 5, 2025
Supreme Court, Kings County

The People of the State of New York

against
Arcelio Barnaby, Defendant.

Ind. No. 76513-24 

For the defendant: Christopher Pedro, Brooklyn Defender Services
For the People: Fabian Smallwood, Kings County District Attorney's Office

Michael D. Kitsis, J.

The People have moved for an order to compel the taking of oral swab samples from the defendant's body for the purpose of DNA analysis. The defendant has opposed, and cross-moved for a protective order limiting comparison of his DNA profile to the evidence in this case.
After careful review of the People's motion, the defendant's response, the procedural history of the case, and all relevant legal authority, the People's motion to compel is granted. The defendant's cross-motion for a protective order is also granted.
The defendant is charged with eighteen counts, including one count each of Criminal Possession of a Weapon in the Second Degree (P.L. § 265.03(1)(b)), Criminal Possession of a Firearm (P.L. § 265.01-B(1)), and Criminal Possession of a Weapon in the Fourth Degree (P.L. § [*2]265.01(1)).
According to the People's Affirmation, the defendant has been indicted for possessing a loaded firearm on October 11, 2024 in Kings County. Smallwood Aff. ¶ 3 (Jan. 8, 2025). The firearm which is the subject of these charges has been swabbed, and the swabs were vouchered and submitted to the Office of the Chief Medical Examiner (OCME), Department of Forensic Biology, for DNA testing and analysis. Id. at ¶ 5. OCME Criminalist Caitlin Izzo determined that the swab of the "fore-end/hammer/release lever" contained a four-person DNA mixture, 90.97% of which is attributed to a 21-locus profile identified as Male Donor A. Id. at Exhibit 1. The swab of the "front strap/back strap/side grips" contained a three-person mixture, 91.51% of which is attributed to a 15-locus DNA profile that matches the DNA profile of Male Donor A. Id. The swab of the "trigger/trigger guard" also contained a four-person mixture, 75.86% of which is attributed to a 15-locus DNA profile that also matches the DNA profile of Male Donor A. Id. Criminalist Izzo determined that the mixtures are suitable for comparison. Id.
An application for an order compelling the defendant to submit to a buccal swab may be construed as a motion for discovery under C.P.L. § 245.40(1)(e), or as an application for a search warrant. See Matter of Abe A., 56 NY2d 288 (1982). In either case, such an order may only issue when the People have established "(1) probable cause to believe the suspect has committed the crime; (2) a 'clear indication' that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable. In addition, the issuing court must weigh the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect's constitutional right to be free from bodily intrusion on the other." Id. at 291.[FN1]
The Court further declared that this test constitutes a "stringent standard[.]" Id. The People "bear the burden of establishing probable cause that defendant committed an offense and that the evidence sought tends to demonstrate defendant's commission of the offense[.]" People v. Goldman, 35 NY3d 582, 593 (2020).
The Court finds that, based on the indictment issued by the grand jury, the People have demonstrated probable cause to believe that the defendant possessed the firearm in question. See People v. Vieweg, 155 AD3d 1305 (3d Dept. 2017); People v. Roshia, 133 AD3d 1029, 1030 (3d Dept. 2015). Therefore, the People have satisfied the first prong of Abe A. See Matter of Abe A., 56 NY2d 288 (1982); People v. Goldman, 35 NY3d 582, 594 (2020); see also C.P.L. § 245.40.
The defendant argues that the People have failed to establish a clear likelihood that relevant, material evidence will be found, because the People have failed to show that the testing in this case was not impacted by the recent incidents of cross contamination reported at OCME. As of October 7, 2024, of more than 180 criminalists who staff the OCME Department of Forensic Biology, nine were identified as having had contaminated cases. OCME Memorandum from Mirtha Camille Sabio, General Counsel, regarding Investigation Update and Disclosure on [*3]Cross-Contamination Event (Oct. 7, 2024) (Defendant's Exhibit A).[FN2]
At that point in the investigation, OCME had already reviewed over 12,000 samples and nearly 4000 cases, and only 22 cases have had evidence of cross-contamination. Id. In early November, OCME completed its internal investigation, having examined 12,873 examples, and concluded that 26 samples from 22 cases were affected by 16 contamination events. Louis Vargas, Director, Quality Assurance, "Root Cause Analysis Report" (Nov. 4, 2024) (Defendant's Exhibit C). That report attributed the contamination events to nine criminalists. Id.
The defendant argues that these numbers are at best incomplete, because OCME is only looking for gross contamination, and is not conducting mixture-to-mixture analysis to ascertain whether lower-level contamination occurred. See Pedro Aff. ¶¶ 11-17 (Jan. 24, 2025). According to the defendant, the current software used by OCME, STRMix, has the capability to conduct mixture-to-mixture analysis. Id. at ¶ 15. However, according to OCME, it has not validated that component of STRMix, and doing so would take several months. Id. at Exhibit B (OCME Memorandum from Tiffany Vasquez, Assistant Director and Technical Leader of Nuclear DNA Operations, regarding Recent defense letters regarding case-to-case contamination events at the OCME (Oct. 29, 2024)).
This Court will not require OCME to conduct analysis using software which has not been validated. Instead, OCME has taken the reasonable approach of looking at samples where contamination could occur, such as when a single examiner examines evidence over the course of multiple days. Id. OCME's investigation included a review of a significant number of samples, revealing an extremely small percentage of involved criminalists and impacted cases. There is no allegation that one of the nine criminalists identified as having contaminated cases worked on this case. This case has not been identified as one of the 22 that was contaminated, out of more than 4,000 examined. There is no evidence, as opposed to speculation, supporting a belief that the cross contamination at OCME had any impact on the validity of the testing in this case, and the defendant's proposed solution — that OCME implement a software component which has not been validated — violates principles of sound forensic science.
The defendant contends that the People have not established a clear indication that relevant material evidence is likely to be found because OCME has not confirmed that this case was not impacted by the contamination event, and argues that the People's motion should be denied or, in the alternative, held in abeyance pending confirmation from OCME.[FN3]
On August 9, 2024, OCME paused testing in all cases while it investigated the contamination events. Defendant's Exhibit C. Testing resumed August 15, 2024, after all criminalists completed updated training in lab cleaning and decontamination and passed competency examinations. Id. See also OCME Memorandum from Tiffany Vasquez, Assistant Director/Technical Leader, regarding Recent Defense Letters Regarding Case-to-Case contamination Events at the OCME (Oct. 29, 2024) (Defendant's Exhibit B). The laboratory report in this case is dated November 25, 2024 (People's [*4]Exhibit 1), well after the contamination events under investigation, and after remedial measures had been put in place to prevent further contamination. The defendant has put forth no evidence of contamination in this case.
Additionally, on October 29, 2024, OCME announced the development of a quality control monitoring procedure used to ascertain the extent of the contamination, and stating that this procedure could be requested in specific cases. Defendant's Exhibit B. That same letter stated that the results of the evaluation would be available in approximately four weeks. Id. The defendant attached this exhibit to his response, which he filed on January 24, 2025. There is no evidence that the defendant has made any request for quality control monitoring in this case. Since he has declined to take advantage of this procedure, and since he has put forth no evidence of contamination in this case, there is no basis for continuing to delay these proceedings.
Generally speaking, while opportunities for contamination or transference are relevant to the weight and admissibility of the evidence at trial, the People are only required at this stage to show a clear likelihood of relevant, material evidence. The Court of Appeals has recently held: "Given that the utility of DNA identification in the criminal justice system is already undisputed, defendant could not mount a credible claim that the DNA evidence was unlikely to provide material evidence." People v. Goldman, 35 NY3d 582, 594 (2020). In that case, surveillance video of a shooting depicted the perpetrator, along with three other individuals, inside a gold Nissan Maxima; several days later, that vehicle was seized and processed for DNA evidence. There is no reason to believe that the vehicle had been preserved in an untouched state between the time of the shooting and the time of its seizure; the opportunity for cross-contamination or for other individuals to have accessed the vehicle during the interim appears not to have mattered to the Court of Appeals' conclusion in finding a clear indication that relevant material evidence was likely to be found.
In this case, testing of the evidence swabs has led to useable DNA evidence, which may be compared with the defendant's DNA profile to ascertain whether he is included or excluded from the mixtures detected on the firearms. The factual allegations and the OCME testing results provide a clear indication that relevant, material evidence is likely to be found, satisfying the second prong of Abe A. See Goldman, supra; Matter of Abe A., 56 NY2d 288 (1982); People v. Watkins, 180 AD3d 1222 (3d Dept. 2020); People v. Halle, 57 Misc 3d 335 (Sup. Ct. Kings Co. 2017).
Finally, a buccal swab, the proposed method for collecting the defendant's DNA, "is undeniably safe, consists of a minimal intrusion and involves no discomfort." Goldman, 35 NY3d at 594. See also In re Nassau Co. Dept. of Social Services, 21 Misc 3d 1126(A) (Fam. Ct. Nassau Co. 2008). Therefore, the People have also satisfied the third prong of Abe A.
The defendant has cross-moved for, and the People have opposed, a protective order which would limit the comparison of the defendant's DNA to the evidence obtained in this case and prohibit its inclusion in OCME's suspect database. Abe A. requires that, before a bodily intrusion can be ordered, the People must establish probable cause to believe the defendant committed the crime, and that the intrusion will supply substantial probative evidence of that crime. See also People v. Halle, 57 Misc 3d 335, 344-48 (Sup. Ct. Kings Co. 2017). Since the People have put forth no allegations meeting the requirements set forth in Abe A. outside of this case, a protective order is granted.
The foregoing constitutes the Decision and Order of the Court.
Dated: February 5, 2025
Brooklyn, NY
ENTER:
Hon. Michael D. Kitsis, A.J.S.C.

Footnotes

Footnote 1: Although the People acknowledge the defendant's "constitutional right to be free from bodily intrusion," Smallwood Mem. of Law p. 7 (Jan. 8, 2025), the People inconsistently claim that "no constitutionally protected interest is involved" in a motion to compel. Id. at p. 9. The Supreme Court resolved that inconsistency when it unequivocally held that a buccal swab involves a search and therefore implicates the Fourth Amendment of the U.S. Constitution. Maryland v. King, 569 U.S. 435, 446 (2013).

Footnote 2: Caitlin Izzo, the criminalist who prepared the laboratory report attached to the People's motion as Exhibit 1, is not one of the nine named criminalists.

Footnote 3: The defendant also asks to hold the motion in abeyance pending disclosure of grand jury minutes and medical records, but does not identify how medical records relate to this case, nor explain why receipt of those materials has any impact on the issues raised in this motion.