Matter of Figueroa v Fabrizio (2019 NY Slip Op 04120)





Matter of Figueroa v Fabrizio


2019 NY Slip Op 04120


Decided on May 28, 2019


Appellate Division, First Department


Gische, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 28, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman,J.P.
Judith J. Gische
Barbara R. Kapnick
Ellen Gesmer
Peter H. Moulton,JJ.


161/18 3305/15 8235 

[*1]In re Samy Figueroa, Petitioner,
H
v
on. Ralph Fabrizio, etc., Respondent. Darcel D. Clark, Nonparty Respondent.



Petitioner seeks a writ of mandamus pursuant
to CPLR article 78.



Petrillo Klein & Boxer LLP, New York (Leonid Sandlar of counsel), for petitioner.
Barbara D. Underwood, Attorney General, New York (Carly Weinreb of counsel), for Hon. Ralph Fabrizio, respondent.
Darcel D. Clark, District Attorney, Bronx (James J. Wen of counsel), for Darcel D. Clark, respondent.



GISCHE, J.


Databanks containing DNA profiles of convicted defendants have proven to be useful and valuable tools in criminal law enforcement. They allow a DNA profile to be used by law enforcement in identifying qualifying DNA matches to unknown forensic material recovered in connection with ongoing and future criminal investigations (Executive Law §§ 995-c[3][a], [6][a]; see also 9 NYCRR Part 6192; see e.g. Kellogg v Travis, 100 NY2d 407, 410 [2003]). [*2]Since 1996, New York has maintained a state DNA index system (SDIS) for the mutual exchange, use and storage of DNA records. The storage and use of such records is subject to the provisions and requirements of Article 49-B of the Executive Law (§ 995 et seq.).
This petition raises two issues of first impression for this Court. The first is whether the local DNA databank maintained by the Office of the Chief Medical Examiner (OCME) is subject to the State Executive Law. The second is, when DNA is collected during the investigatory phase of a particular crime that ultimately results in a youthful offender (YO) determination, whether the court has the authority to expunge the YO's DNA profile from the SDIS, along with the underlying DNA records. We conclude that both questions should be answered in the affirmative.
The underlying facts are not in dispute. On October 18, 2015, petitioner, then age 16, was arrested on a weapons charge following a shooting. A gun was recovered from a vehicle in which he was a passenger. Petitioner was taken into custody and administered Miranda warnings. He was then asked to voluntarily provide a DNA sample. Petitioner agreed by signing a consent form, and a buccal swab was obtained from him. He was subsequently indicted on a charge of criminal possession of a weapon in the second degree (Penal Law § 265.03). Although in a pretrial suppression motion petitioner contested the voluntariness of his consent to providing DNA, he ultimately agreed to a YO disposition (CPL 720.10 et seq.). Because the YO disposition was agreed to before the court made any decision on the pending suppression motion, petitioner forfeited any right to contest the voluntariness of his consent to providing a DNA sample for use in that particular prosecution (People v Hecker, 105 AD3d 606 [1st Dept 2013] lv denied 21 NY3d 1016 [2013]). At some point petitioner's DNA profile was uploaded to the SDIS [FN1].
Following the conclusion of his criminal case, petitioner filed a motion in Supreme Court to have his DNA and DNA-related records expunged from OCME's databank. In denying the motion, the Supreme Court held that, as a matter of law, it had no authority to grant the relief requested on three separate bases. The Supreme Court held that Executive Law § 995-c(9)(b), which pertains to expungement of DNA profiles, did not apply to OCME which was a local DNA index. The Court also determined that nothing in the YO statute expressly provided for expungement of lawfully collected DNA from a youthful offender (CPL § 720.35). Finally, the Supreme Court held that although Executive Law §§ 995-c(9)(a), (b), provides for expungement of DNA records in the case of an acquittal, reversal or vacatur of a conviction, a YO adjudication did not qualify under any of those criteria.
Petitioner contends that the Supreme Court has discretion to expunge a YO's DNA records and seeks a writ of mandamus, directing that respondent (a Supreme Court Justice) exercise his discretion to decide whether respondent's DNA profile and records should be expunged under the facts and circumstances of the underlying criminal proceeding.
The Article 78 petition is properly brought
Respondent urges dismissal of this petition based on two procedural threshold issues, which we reject. We do not agree that the District Attorney is a necessary party under either CPLR 7804(i) or CPLR 1001(a). Nor is the DA required under a permissive joinder analysis. There is no relief that the DA can provide, and the DA will not be equitably affected by any disposition of this petition (see e.g. City of New York v Long Is. Airports Limousine Serv. Corp., 48 NY2d 469, 475 [1979]). Additionally, not only was the DA served with the petition, but filed opposition, which was considered by this Court (Matter of Lovell v Goodman, 305 AD2d 314, 315 [1st Dept 2003]). Consequently the failure to name the DA as a party is not fatal to this petition.
Respondent also argues that petitioner has an adequate remedy at law, namely a direct appeal from the denial of his underlying expungement motion. No appeal lies from a determination made in a criminal proceeding, however, unless specifically provided for by statute (People v Lovett, 25 NY3d 1088, 1090 [2015]). The limited grounds for appeal set forth in section 450.15 of the Criminal Procedure Law do not apply to the Supreme Court disposition of the expungement motion. Although respondent now argues this is a directly appealable civil matter, neither party, nor the DA, treated the underlying motion as one for civil relief, with a right of direct appeal. In the absence of an available remedy at law (see CPL 450.20), the important issues raised on this appeal will escape this Court's review unless this petition proceeds (Matter of Clark v Newbauer, 148 AD3d 260, 265-266 [1st Dept 2017])[FN2]. Moreover, this Court has original jurisdiction over the issues raised because they concern a sitting justice (CPLR 506[b][1]; 7804[b]; see Matter of Baba v Evans, 213 AD2d 248 [1st Dept 1995], cert denied 520 US 1254 [1997]).
The Executive Law applies to OCME's DNA Laboratory and Databank
There is abundant support for the conclusion that OCME's responsibilities in testing, analyzing and retaining DNA data is subject to the State Executive Law. Respondent's arguments that the statutory reference to a "state" DNA identification index in Article 49-B necessarily excludes a local DNA laboratory like that the one operated by OCME, is unavailing.
Since 1996, New York has maintained a "state DNA identification index" to store the DNA profiles of "designated offenders" as expressly defined in the statute (Executive Law §§ 995[6], 995-c). Designated offenders are required to provide post conviction DNA samples, regardless of whether DNA was required as part of the investigation of the underlying crime for which they were convicted (Executive Law § 995-c[3]). The collected DNA samples are then tested and analyzed by authorized forensic DNA laboratories, which create profiles that are indexed and eventually uploaded to the state databank (Executive Law § 995-c[5]).
Article 49-B broadly defines a "forensic [DNA] laboratory" as "any laboratory operated by the state or unit of local government that performs forensic DNA testing on crime scenes or materials derived from the human body for use as evidence in a criminal proceeding or for [*3]purposes of identification" (Executive Law § 995[1] [emphasis added]). The Commission on Forensic Science (CFS), a body created under the Executive Law, sets the minimum standards and a process by which "all" public forensic laboratories within the state are accredited (Executive Law §§ 995-a; 995-b). The Executive Law also ensures that all forensic DNA laboratories comply with any applicable privacy laws, and adhere to restrictions on the disclosure or re-disclosure of DNA records, findings, reports and results (Executive Law § 995-d[1]). Pursuant to Executive Law § 995-d, DNA testing records, findings, and reports "shall be confidential," with certain exceptions, one being for use in law enforcement (Executive Law §§ 995-d[2]; 995-c[6]).
OCME, established in 1918, self-identifies as having the largest public DNA crime laboratory in the world (About OCME https://www.nyc.gov/site/ocme/about/about-ocme.page, last accessed May 10, 2019). It is an independent subdivision of the New York City Department of Health and Mental Hygiene. Pursuant to section 557(f)(3) of the New York City Charter, OCME may "to the extent permitted by law, provide forensic and related testing and analysis . . . in furtherance of investigations ... not limited to . . .(DNA) testing . . ."
Notwithstanding OCME's general authorization to act under the New York City Charter, it is also one of New York State's eight local, public forensic laboratories, accredited by the CFS, all fulfilling the Executive Law mandate to test, analyze and maintain the DNA records of designated offenders (https:/www.criminaljustice.ny.gov/forensic/dnabrochure, last last accessed May 10, 2019; see Executive Law §§ 995-b, 995-c[1],[4],[7]; 9 NYCRR 6190). These local public forensic laboratories each upload their DNA data into a Local DNA Index System, or LDIS. The LDIS and SDIS are part of the Combined DNA Index System, known as CODIS. CODIS is the Federal Bureau of Investigation's (FBI) nation-wide searchable software program that supports criminal justice DNA databases (https://www.fbi.gov/services/laboratory/biometric-analysis/codis/codis-and-ndis-fact-sheet, last accessed May 10, 2019). The National DNA Index System (NDIS), is part of CODIS (see also https://www.criminaljustice.ny.gov/forensic/dnabrochure.htm, last accessed May 10, 2019). An LDIS is defined by the State executive branch regulations as "that level of the CODIS program in which a public DNA laboratory maintains its DNA records for searching and uploading to higher level indices such as SDIS and NDIS" (9 NYCRR 6192.1[r]). Information available in the New York State Division of Criminal Justice Services (DCJS) website establishes that the forensic DNA profiles that OCME generates at the LDIS level flow upward to populate the SDIS (https://www.criminaljustice.ny.gov/forensic/dnafaqs.htm., last accessed May 10, 2019).
OCME's forensic DNA laboratory operates in accordance with guidelines and accreditation credentialing required under the Executive Law. Although OCME also has its own internal procedures for the verifying and reporting of DNA matches within the state, nationwide and beyond, they are in addition to the minimum procedures required under the Executive Law. (https://www1.nyc.gov/site/ocme/services/technical-manuals.page, last accessed May 10, 2019); https://www1.nyc.gov/assets/ocme/downloads/pdf/technical-manuals/forensic-biology-codis-manual/Verifying-and-Reporting-DNA-Matches.pdf, last accessed May 10, 2019).
The Executive Law expressly provides that it "shall not apply" to a federally operated DNA laboratory (Executive Law § 995-e). There is no similar exclusion for an LDIS, like OCME (Executive Law § 995[1]). To the contrary, the broad definition of "forensic laboratory" in the Executive Law includes DNA laboratories operated by local government. Given OCME's responsibilities for the testing, storage and sharing of DNA data, the Executive Law clearly applies to an LDIS, like OCME's. By establishing a "state" DNA identification index, the state has created a "comprehensive and detailed regulatory scheme" with regard to the subject matter. OCME's operations fall firmly within the Executive Law umbrella and "must yield to that of the State in regulating that field" (People v Diack, 24 NY3d 674, 677 [2015]).
[*4]The Supreme Court has discretion under the Executive law to
Expunge a YO's DNA Records
As more fully set forth below, we hold that the same discretion afforded to a court under the Executive Law to expunge DNA profiles and related records when a conviction is vacated may also be exercised where, as here, a YO disposition replaces a criminal conviction. The motion court, in finding that, as a matter of law, it had no discretion, failed to fulfill its statutory mandate to consider whether in the exercise of discretion, expungement of petitioner's DNA records was warranted in this case.
A core mandate of the Executive Law is that, after conviction, "designated offenders" must provide DNA samples to be tested, analyzed and retained in the SDIS (Executive Law § 995-c). In 2012, the category of "designated offenders" who must provide post conviction DNA samples was considerably expanded to require that any defendant convicted of "any felony ... or any misdemeanor [FN3] defined in the penal law" (Executive Law § 995[7], as amended by L 2012, ch 19), "shall be required to provide a sample ... for DNA testing" and for inclusion in the state DNA identification index (Executive Law § 995-c[3][a]). It is beyond dispute that youthful offenders are not "designated offenders" under the Executive Law and that their DNA may not be collected post conviction (https://www.criminaljustice.ny.gov/forensic, last accessed May 10, 2019). In fact, a YO is not even subject to a mandatory surcharge imposed to collect DNA (CPL 60.02[3], 60.35[10]; People v Stump, 100 AD3d 1457, 1458 [4th Dept 2012], lv denied 20 NY3d 1104 [2013]).
The only reason we are faced with issues concerning retention of petitioner YO's DNA records is because the DNA was collected by law enforcement as part of the underlying criminal investigation against him. The DNA was not and could not have otherwise been collected or stored in the SDIS. Petitioner's circumstances are, therefore, different from mandatory postconviction DNA collection otherwise required by the Executive Law.
After an arrest, but preconviction, a DNA sample may only be obtained from a suspect on consent, or by warrant or court order (CPL 240.40[2][v]; see e.g. People v Dail, 69 AD3d 873, 874 [2d Dept 2010], lv denied 14 NY3d 839 [2010]). As limited by constitutional concerns, a court will issue an order to collect a DNA sample only when there is (1) probable cause to believe defendant has committed a crime, (2) a "clear indication" that relevant evidence will be found, and (3) the method used to secure it is safe and reliable (People v Debraux, 50 Misc 3d 247, 260 [Sup Ct, NY County 2015] citing Matter of Abe A., 56 NY2d 288, 291 [1982]). The mandatory DNA requirements of Executive Law § 995-(9)(a) do not apply and cannot be invoked to collect DNA from a suspect by law enforcement for use in the investigation or prosecution of a crime.
The Executive Law provides, under certain limited circumstances, an ability to expunge a DNA profile from the databank, as well as the related DNA records. The law, however, makes distinctions, based upon whether the DNA was mandatorily collected post conviction or obtained as part of the investigation of the prosecution of a crime (Executive Law § 995-c[9]). Where the DNA is mandatorily collected from a designated offender after a conviction, if the conviction is then reversed or vacated or the defendant has been pardoned, the DNA record is automatically expunged from the SDIS. Additionally, the defendant has the right to apply to the court in which the original judgment of conviction was granted for the discretionary expungement of any additional related DNA records, including samples or analyses (Executive Law § 995-c[9][a]).
Where, however, DNA was provided either voluntarily or obtained pursuant to court order during an investigation or prosecution of a crime, a defendant may only seek the discretionary expungement of the DNA records where: (1) no criminal action was timely commenced; (2) there was an acquittal; or (3) if there was a conviction, it was reversed or vacated or the defendant was pardoned (Executive Law § 995-c[9][b] [discretionary expungement]). A youthful offender could never qualify for automatic expungement from the database, because no DNA can be collected from such a youth post disposition. Any rights that a youthful offender may have to expungement, therefore, flow only from the discretionary authority the statue provides to the court with respect to DNA material that may have been collected during the investigatory, preconviction phase of a criminal proceeding.
We disagree with the motion court's conclusion that a YO finding does not meet any of the statutory criteria for the exercise of discretionary expungement. A YO disposition by its very nature is a judgment of conviction that is vacated and then replaced by a YO determination. This conclusion is supported by the mechanics of the YO statute, its salutary goals, and legislative intent.
The YO statute (Penal Law §§ 720.10[1], [2] et seq.) codifies a legislative desire to relieve youths from the stigma or onus of a criminal record and the consequences of "hasty or thoughtless acts" (People v Francis, 30 NY3d 737, 740-741 [2018], quoting People v Drayton, 39 NY2d 580, 584 [1976]). Upon determining that an eligible youth is a youthful offender, the youth's conviction is deemed vacated and replaced by the YO finding, affording that youth "the opportunity for a fresh start, without a criminal record" (People v Francis, 30 NY3d at 741). A YO adjudication is "not a judgment of conviction for a crime or any other offense" (CPL 720.35[1]). While the motion court reasoned that the vacatur of a conviction in a YO circumstance was not a finding the petitioner was "not guilty," not all vacaturs of convictions in non-YO circumstances are the equivalent of findings of innocence (see Wilson v State of New York, 127 AD3d 743, 744 [2d Dept 2015], lv denied 25 NY3d 913 [2015]; Lekav v State of New York, 16 AD3d 557, 558 [2d Dept 2005], lv denied 5 NY3d 704 [2008]). The Executive Law does not provide that only particular types of vacaturs are eligible for expungement consideration.
Aside from imposing a lesser punishment, a further objective of a YO finding is to protect a youth from having an historical record of criminal behavior arising from the circumstances underlying the YO. Thus, when a youth is granted YO status, "all official records and papers, whether on file with the court, a police agency or the [DCJS]" relating to the YO adjudication are rendered confidential (CPL 720.35[2]; Matter of Capital Newspapers Div. of Hearst Corp. v Moynihan, 71 NY2d 263, 268 [1988]). Such records remain confidential and they "may not be made available to any person or public or private agency," except where required or permitted by law or court order, or unless the statutory privilege is waived, for instance by the youthful offender affirmatively placing the information or conduct at issue in a civil action (CPL 720.35[2]; Castiglione v James F.Q., 115 AD3d 696, 697 [2d Dept 2014]).
Consistent with this public policy, the legislature has generally exempted YO status from the reach of the Executive Law. A youthful offender is not a "designated offender" mandatorily required to provide DNA. Proposed legislation to expand the definition of "designated offender" to explicitly include YOs never made it out of the committee process (see 2011 NY Senate Bill S1675; 2011 NY Senate Bill S693A). In a 2012 press release, Governor Andrew M. Cuomo expressly stated that the law "does not apply to . . . youthful offenders" (https://www.criminaljustice.ny.gov/pio/press_releases/2012-8-1_pressrelease.html, last accessed May 10, 2019).
Respondent argues that there is no prohibition in the statute against the permanent storage of petitioner's profile and records in OCME's DNA databank or further dissemination of that [*5]information. That observation, while true, is not inconsistent with discretionary expungement of such records in appropriate circumstances. In respondent's view, once a youthful offender's DNA is lawfully obtained, that youth loses any right to "recover" it. These arguments are irreconcilable with the inherent protections of CPL § 720.35(2) and undermines the legislature's desire to provide a youthful offender with "the opportunity for a fresh start, without a criminal record" (People v Francis, 30 NY2d at 741). Moreover, a "record" need not be documentary in nature or a file, as respondent suggests. The confidentiality provision has been applied to the information gleaned from corporeal test results (see Matter of Barnett v David M.W., 22 AD3d 575, 577 [2d Dept 2005][results of breathalyzer and blood alcohol tests that resulted in a prior YO adjudication fall within the category of information protected by CPL 720.35, unless waived]).
Petitioner did not, either expressly or by implication, waive the privilege of nondisclosure and confidentiality by providing his DNA before the court made its determination that he was eligible for YO status. Clearly the Executive Law permits an adult who has voluntarily given his or her DNA in connection with a criminal investigation the right to seek discretionary expungement where a conviction had been reversed or vacated. A youthful offender does not have and should not be afforded fewer pre-YO adjudication protections than an adult in the equivalent circumstances.
Respondent contends that use of the permissive word "may" in Executive Law § 995-c(9)(b) means petitioner has no clear legal right to expungement of his DNA profile from the OCME databank and the legislature intended to impart discretion on the court in deciding whether to grant a motion for expungement. We agree that this subdivision of the law imparts discretion on the part of the court (Executive Law § 995-c[9][b]). Respondent, however, did not exercise any discretion by finding that the law simply did not apply to these circumstances. Significantly, we are not directing the respondent how to exercise his discretion, only that it must do so. In considering whether, in whole or part, to expunge petitioner's DNA records in this case, respondent should consider, among other things, the events surrounding the underlying YO finding, including the extent of petitioner's participation in the underlying crime, the circumstances surrounding petitioner's consent to DNA sampling, including his age when such consent was provided, his claim of developmental delays and the absence of a parent or other adult at the time of his consent. Because the respondent held he had no discretion, none of these or any other relevant factors were considered before respondent denied the motion.
Accordingly, the petition brought pursuant to CPLR article 78 for a writ of mandamus should be granted, without costs, and respondent directed to exercise his discretion to decide whether, under the facts and circumstances of this case, petitioner's DNA profiles and records, or any part thereof, should be expunged from the SDIS or other part of the court records.All concur.
Petition brought pursuant to CPLR article 78 for a writ of mandamus granted, without costs, and respondent directed to exercise his discretion to decide whether, under the facts and circumstances of this case, petitioner's DNA profiles and records, or any part thereof, should be expunged from the SDIS or other part of the court records.
Opinion by Gische, J. All concur.
Friedman, J.P., Gische, Kapnick, Gesmer, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 28, 2019
CLERK



Footnotes

Footnote 1:Exactly when this record was uploaded to SDIS is unclear, but that it was actually uploaded at some point is not disputed by respondent or refuted by the District Attorney. The issue of at what point in a criminal proceeding DNA information can be unloaded to SDIS, while very much an open legal issue, is not implicated by this proceeding (see People v Flores, 61 Misc 3d 1219[A] [Crim Ct, NY County 2018]; People v Blank, 61 Misc 3d 542, 545 [Sup Ct, Bronx County 2018]; People v K.M., 54 Misc 3d 825, 832 [Sup Ct, Bronx County 2016]).

Footnote 2:Issues concerning collection of a youth's DNA, what happens when a YO determination is made, and whether the profile must or should be expunged has garnered considerable attention at the trial level, not always with the same results (People v K.N., 62 Misc 3d 444 [Crim Ct NY County 2018]; People v Flores, 61 Misc 3d 1219[A] [Crim Ct NY County 2018]; People v K.M., 54 Misc 3d 825 [Sup Ct Bronx County 2016]; People v Debraux, 50 Misc 3d 247 [Sup Ct NY County 2015]; People v Mohammed, 48 Misc 3d 415 [Sup Ct Bronx County 2015]).

Footnote 3:There is an exception for misdemeanor concerning marijuana possession (Penal Law § 221.10).